Welch, C. J.
As to the question whether the finding of' the-court, that the offer of Mitchell was not accepted within-the two weeks, is supported by the evidence, it need only be said that a majority of us can not answer the question in the negative, with that certainty which would justify us-in reversing the judgment, and granting a new trial.
Nor do we think that the ground assumed by counsel for the plaintiffs in error, that time was not of the essence of Mitchell’s offer, is maintainable. The rule frequently adopted in a court of equity, that time is not of the essence-of a contract, does not apply, as we understand the law, to a mere offer to make a contract. The offer rests upon no consideration, and may be withdrawn at any time before-acceptance. An offer without time given for its acceptance-must be accepted immediately, or not at all; and a limitation of time for which a standing offer is to run is equivalent to-the withdrawal of the offer at the end of the time named. A standing offer is in the nature of a favor granted to the opposite party, and can not on any just principle be made-available after the time limited has expired.
We are unanimous in the opinion that the tender by Mitchell of treasury notes was a sufficient tender, and all-that in law or equity he was bound by his contract to make; and that the court did not err in refusing to require-payment of the purchase money in gold. If Mitchell was-bound to pay this purchase money in gold, he was bound also to pay the stipulated annual rents in gold; both were-provided for in the same contract. That such is not the law of the contract, we think ought to be considered as settled by the late decisions of the Supreme Court of the United States. 12 Wall. 457; 13 id. 604; 14 id. 307. In the cases in 12 Wall. (Legal Tender cases) the second proposition of the syllabus is as follows:
“ The acts of Congress known as the legal tender acts- *343 are constitutional when applied to contracts made before their passage.”
At page 449, in delivering its opinion in the same case, the court says:
“ Every contract for the payment of money simply is necessarily subject to the constitutional power of the government over the currency, . . . and the obligation of the parties is, therefore, assumed with reference to that power . . . “ They (engagements made before the passage of the acts) are engagements to pay with lawful money of the United States.” Chief Justice Chase, in delivering the opinion of the court in Butler v. Howittz, 7 Wall. 260, says: ‘‘ The absence of any express stipulation, as to description, in contracts for the payment of money generally, warrants the inference of an understanding between the parties, that such contracts may be satisfied ... by the tender of any lawful money.”
Under these adjudications, it is useless to contend that the legal tender acts apply only to “ debt,” in the strict technical sense of that term, and do not apply to a voluntary or optional payment as in the present case. It is equally useless to contend that the acts do not apply to and govern the rights of parties in equity, equally as at law. The language of the legal tender act is, not merely that these notes shall be “a legal tender in payment of all debts,” etc., but that they shall be “ lawful money, and a legal tender in payment of all debts,” etc.
The highest tribunal of the -country having settled it that these acts are constitutional, and that they enter into and form part of all contracts for money, how can it be denied that in equity as well as at law, and in cases of optional payment, equally as in cases of compulsory payment, such notes are to be regarded as money, and a lawful tender. Surely contracts made before the passage of the legal tender acts are not to receive one construction in a court of law, and another construction in a court of equity; and surely both courts alike will endeavor to carry into effect the contract of the parties, as they in law are supposed to have “ under *344 stood ” and intended it. That there is no ground for any such discrimination between equitable and legal rights, or between optional and compulsory payments, seems to be settled in the cases of Dooley v. Smith, 13 Wall. 604, and 14 id. 307. Both these cases were bills in equity to redeem mortgaged premises ; in both the money tendered was for the amount equitably due on the mortgage, and was made 'in treasury notes; and in both cases the tender was held sufficient.
We also unite in the opinion that the court did not err in decreeing a compensation to Mitchell for the moiety of the property not owned by the testator. As lessor, the testator assumed to be the sole owner, and Mitchell dealt with him in the faith that he was such owner, and never' knew the contrary, as the evidence shows, until after he had made the offer to surrender his lease. To hold, under such circumstances, that he was not entitled to specific performance, including compensation for the outstanding moiety of the property, would be to hold that the lessor and vendor should profit by his own wrong.
As to the claim set up on behalf of the railroad company, that it is a bona 'fide purchaser without notice, it is perhaps enough to say, that Mitchell was in possession of the lot at the time the company made its contract for purchase, which fact is in equity equivalent to notice of all the rights which Mitchell had in the property. Had Mitchell’s offer been accepted within the time limited, the verbal contract of sale to the railroad company, made on the faith of that offer, although it would by no means constitute the company a bona fide purchaser without notice, in the ordinary meaning of those words, would doubtless have been a good bar to Mitchell’s right to a specific execution of his contract, notwithstanding the fact that the offer was not reduced to writing. And we suppose that this defense would have been equally available to the company as to the executors. But the answer to all this is, that the offer never ripened into a contract, and that Mitchell stands just as he would have stood had the offer never been made.
*345 A majority of us, therefore, fail to see any error in the record.

Judgment affirmed,.

"White, Rex, Gilmore, and MoIlvaine, JJ., concurred.